**UNITED STATES DISTRICT COURT**

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER PAUL COMMINEY, | Case No. 1:15-cv-00106-SMS |
| Plaintiff, | |
| v. | ORDER AFFIRMING AGENCY'S DENIAL OF BENEFITS |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | |
| Defendant. | |

Plaintiff Christopher Paul Comminey seeks review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for supplemental security income ("SSI") under Title XVI of the Social Security Act (42 U.S.C. § 301 *et seq.*) ("the Act"). The matter is before the Court on the parties' cross-briefs, which were submitted without oral argument to the Magistrate Judge. Following a review of the record and applicable law, the Court affirms the decision of the Administrative Law Judge ("ALJ").

I. PROCEDURAL HISTORY AND FACTUAL BACKGROUND[1]

A. *Procedural History*

Plaintiff applied for SSI on March 16, 2009. AR 89. The Commissioner denied Plaintiff's

---

[1] The relevant facts herein are taken from the Administrative Record ("AR").

claim on June 3, 2009, and upon reconsideration on November 9, 2009. AR 109, 118. At a hearing on October 29, 2010, before ALJ Michael D. Radensky, Plaintiff appeared with counsel, an impartial vocational expert ("VE"), and a medical expert, David M. Glassmire, Ph.D. AR 67. Thereafter, on December 15, 2010, the ALJ issued a written decision finding Plaintiff not disabled under the Act. AR 104. Plaintiff requested review from the Appeals Council, who remanded the case to the ALJ, directing him to obtain supplemental evidence from a VE to clarify the effect of the assessed limitations on Plaintiff's occupational base. The ALJ was to issue a new decision after providing Plaintiff with the opportunity for a hearing, address any evidence submitted with the request for review, and take further action as need to complete the administrative record. AR 106-107.

At the second hearing, held on May 6, 2013, Plaintiff appeared and testified again before ALJ Radensky. Also at the hearing were Plaintiff's counsel, an impartial VE, and a witness, Mark Napier. AR 42. In a written decision dated June 7, 2013, the ALJ again found Plaintiff not disabled under the Act. AR 35. On November 25, 2014, the Appeals Council denied review of the ALJ's second decision, which thus became the Commissioner's final decision, and from which Plaintiff filed a timely complaint. AR 1, Doc. 1.

B. *Factual Background*

1. Plaintiff's Written Testimony

In his first disability report from April 2009, Plaintiff claimed he could not work due to bipolar disorder. From 1995 to 2005, he worked as a laborer for various temporary agencies. This ended in 2005 when he was incarcerated. AR 275-276. While incarcerated, Plaintiff received treatment for mental illness. AR 278.

Plaintiff's Adult Function Report from May 2009 states a typical day consisted of watching television, working with wood, and helping his mother at her house. He struggled to stay focus and sleep. He could perform some house and yard work, with help in maintaining focus. He went out

daily for four to five hours and shopped twice a week. Socially, he enjoyed talking, fishing and walking around, activities which he did three times a week. He also regularly visited the park or friends' house. He could pay attention for no longer than ten minutes, did not follow written and spoken instructions well, and did not handle stress or changes in routine well. AR 291-296.

In his second disability report from June 2009, Plaintiff reported some changes stemming from his mental illness: slow movement, tiredness, depressed feelings, trouble staying focus, and inability to sleep. There were no changes, however, to his daily activities. AR 317. He had been seeing Dr. Incyo C. Kim for counseling and medication for his bipolar disorder. AR 312-313.

Plaintiff's third disability report from November 2009 indicates no change in his conditions. He continued to receive medications for his mental illness. He had been trying to find work but the medications sometimes prevented him from securing employment. AR 350-353.

2. Third Party Written Testimony

Plaintiff's ex-wife, Darrellene Comminey, provided a Third Party Adult Function Report in May 2009. Therein, she stated Plaintiff sometimes cooks, washes his clothes, and cleans her car. He drove and went out daily. He plays with and feeds the cat. He also takes out the trash, mops and vacuums the floor; spending about two hours a few times a week on the chores. However, he needed reminders to finish his tasks. Since his illness, Plaintiff struggled to sleep at night. He shopped but did not handle money as he is forgetful. Socially, he visits with his father and brother, goes to church, and visits the park. But since the illness he no longer likes to go out. Functionally, Plaintiff could pay attention for five or ten minutes. He did not finish what he started and requires repetition when it comes to written instructions. He could not handle stress at all. AR 283-290.

Ms. Comminey provided another report in August 2009. AR 327. Unlike the earlier report, she indicated Plaintiff did not need help with house and yard work. AR 329. He could pay bills and count change, though he did not handle a savings account. He did not need reminding to go places.

And unlike the earlier report, she did not check that Plaintiff's illness affected his ability to complete tasks, talk and hear; though it did affect his bending and reaching. He continues, however, to forget. He sometimes finishes what he started. AR 332.

### 3. Medical Evidence

Before the ALJ's first decision, the bulk of Plaintiff's medical evidence came from Arrowhead Regional Medical Center ("Arrowhead"), the California Department of Corrections and Rehabilitation ("CDCR"), and Mesa Counseling Center ("Mesa").

Treatment notes from Arrowhead from September 2004 to December 2005 show Plaintiff's numerous visits for various conditions such as facial fracture, finger contusion, depression, acute bronchitis, gastric pain, cough, and toothache. AR 395-419.

The CDCR records from September 2006 and January 2007 show Plaintiff was diagnosed with bipolar disorder and psychotic disorder not otherwise specified. AR 453. Thereafter, he was diagnosed with mood disorder not otherwise specified, polysubstance abuse, and schizoaffective disorder. AR 428, 435, 460. In March 2008, his mood disorder was stable with medications. AR 429-430. But later in 2008, Plaintiff complained of depression, racing thoughts, auditory and visual hallucinations, insomnia, and feelings of worthlessness and helplessness, anxiety and agitation. AR 528, 532. He reported seeing shadows and believed people were out to get him. AR 530. By early 2009, however, Plaintiff reported doing well on his medications, attaining mood stability, and was not suicidal. AR 519, 521, 524. He had good coping capacity and decent insight. AR 526.

In May 2009, medical consultant Kevin Gregg, MD, completed a psychiatric review technique form and opined that Plaintiff had bipolar disorder with no restrictions in activities of daily living. There were, however, mild difficulties in maintaining social functioning, concentration, persistence or pace. AR 546, 551. Dr. Gregg concluded that Plaintiff appeared capable of simple repetitive tasks at worst and that he had no severe conditions. AR 555. The decision was affirmed

by another medical consultant, Kevin Loomis, MD, in November 2009.  AR 586.

At the request of the California Department of Social Services, Adam Cash, Psy. D., completed a psychological evaluation of Plaintiff in July 2010.  AR 587.  Dr. Cash concluded, however, that Plaintiff's "performance on intellectual and cognitive testing is invalid and should not be interpreted.  His effort was suspect.  His presentation and history do not match his test performances and there were several inconsistencies in his presentation.  A decision as to his level of functioning cannot be rendered at this time[.]"  AR 590.

From April 2010 to March 2013, Plaintiff was under the care of physicians from Mesa.  He made nearly monthly visits for treatment and/or medications.  Those records following December 2010 generally show the medications prescribed to Plaintiff, and while they reflect his reports of symptoms and side effects of the medications, there are no indications of diminished functional limitations.  On some occasions, Plaintiff reported feeling better or stable with the medications, which improved his symptoms.  Notably, one of the physicians treating Plaintiff was Romeo D. Villar, MD.  AR 676-699, 705-727.  Dr. Villar completed a mental impairment questionnaire in March 2011, wherein he diagnosed Plaintiff with schizoaffective disorder with symptoms of sleep disturbance, mood disturbance, emotional liability, delusions or hallucinations, anhedonia, paranoia, difficulty thinking, suicidal ideation, and hostility and irritability, and depression.  He described the clinical findings which support the severity of Plaintiff's mental impairment and symptoms as follows: "[patient] is labile, [illegible] - paranoia, racing thoughts - mood swing - poorly focus."  He did not find malingering.  He found that with medications, Plaintiff's response was fair.  Functionally, Dr. Villar opined that Plaintiff would be absent from work for more than three times a month, have difficult working a regular job due to poor concentration and stress tolerance.  He found marked limitation in Plaintiff's ability to maintain social functioning and concentration, persistence or pace; and that Plaintiff had repeated episodes of extended duration of decompensation.  No

explanation was given for the functional limitations.  AR 728-731.

    4. Plaintiff's Oral Testimony

Plaintiff was, at the time of the first hearing, 50 years old.  He completed high school and four years of trade school.  While in prison, Plaintiff worked in maintenance.  His last job outside of prison was in pest control.  Plaintiff admitted to consuming alcohol about three months earlier, although not on a regular basis.  He was, however, participating in a dual diagnostic program with the Department of Mental Health.  AR 70-73.

Plaintiff was 52 years old at the second hearing and living with his wife and father.  He testified to being free of drugs and alcohol, and receiving treatment at Mesa.  He was not, however, functioning well.  He could not finish a task and had trouble understanding others.  Because he would get overwhelmed by a task, Plaintiff did not think he could perform a simple job five days a week for eight hours a day.  On average, Plaintiff experienced four bad days out of a week, which kept him at home; although he tried to make himself go out every day.  On a good day, he would attend a program at Mesa for about two hours and engage in activities such as reading and playing pool.  Aside from washing the dishes every other day, Plaintiff could not perform any other chores on a sustained basis.  AR 48-54.

    5. Medical Expert Oral Testimony

Dr. Glassmire testified at the first hearing.  He concluded that Plaintiff had bipolar disorder not otherwise specified and a history of polysubstance dependence.  He had reviewed records from the CDCR, including the parole outpatient clinic, Arrowhead, and the report from Dr. Cash.  He opined that Plaintiff should be limited to simple, repetitive tasks, with no interactions with the public, no tasks requiring hypervigilance, no fast-paced work, and no responsibility for the safety of others.  AR 74-77.

6. Third Party Oral Testimony

Mr. Napier, a registered addiction specialist at Mesa, testified at the second hearing. He had worked on Plaintiff's case for two years. The two interacted through a weekly diagnosis program. Mr. Napier also worked with Plaintiff outside the program, helping him with case management and job placement. AR 55-56.

Mr. Napier testified that Plaintiff gets frustrated when confronted with a task as a result of his illness. AR 57. Plaintiff was forthcoming about his past drug problem when he first joined the program. Mr. Napier opined that when Plaintiff became sober in early 2011 his ability to function worsened, as evident by his nervousness and his decreased ability to understand and follow conversations or instructions. It was common for Plaintiff not to complete a task. AR 59-60.

7. Vocational Expert Oral Testimony

The VE at the first hearing classified Plaintiff's past work as falling into three areas: warehouse worker, handyman, and pest control worker. Given that past work, the ALJ asked the VE to consider an individual with a high school plus education who is closely approaching advance age, and has no exertional limitations but is limited to work involving simple, repetitive tasks, no interaction with the public, no tasks requiring hypervigilance, no fast-paced work, and no responsibility for the safety of others. The VE opined that such person could perform the work of a warehouse worker. He further opined that if such person could not focus for approximately a third of the day due to underlying psychiatric symptoms or would be absent from work three or four days per month, the person would be precluded from past work and all other employment. AR 85-86.

At the second hearing, the ALJ posed the same hypothetical to a different VE who opined that such person could not perform any past work. Such person could, however, work as a hand packager, floor waxer, or hospital cleaner. But, if such person were to be absent from work for more than three times a month or has a tendency to stray off task due to underlying psychiatric issues for

7

at least 20 percent of the workday, he would not be able to perform Plaintiff's past work or any work. AR 63-64.

   8. ALJ's Decision

A claimant is disabled under Title XVI if she is unable to engage in substantial gainful activity because of a medically determinable physical or mental impairment that can be expected to result in death or has lasted or can be expected to last for a continuous period of no less than twelve months. 42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. § 416.905(a). To encourage uniformity in decision making, the Commissioner has promulgated regulations prescribing a five-step sequential process which an ALJ must employ to evaluate an alleged disability.[2]

In his second written decision, the ALJ found that at step one, Plaintiff had not engaged in substantial gainful activity since the application date of March 16, 2009. At step two, Plaintiff had the following severe impairments: bipolar disorder not otherwise specified and a history of polysubstance abuse. At step three, Plaintiff did not have an impairment or combination of impairments that met or equaled the severity of a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. Plaintiff had the RFC to perform a full range of work at all exertional levels but with the some nonexertional limitations: he is limited to simple, repetitive tasks; can have no interaction with the public, cannot perform tasks requiring hypervigilance; cannot perform fast-paced work; and cannot be responsible for the safety of others. At step four, Plaintiff was unable to perform any past relevant work. But at step five, the ALJ found there were jobs in the national economy existing in significant numbers which Plaintiff could perform, considering his age, education, work experience

---

[2] "In brief, the ALJ considers whether a claimant is disabled by determining: (1) whether the claimant is doing substantial gainful activity; (2) whether the claimant has a severe medically determinable physical or mental impairment or combination of impairments that has lasted for more than 12 months; (3) whether the impairment meets or equals one of the listings in the regulations; (4) whether, given the claimant's residual functional capacity, the claimant can still do his or her past relevant work; and (5) whether the claimant can make an adjustment to other work. The claimant bears the burden of proof at steps one through four." *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012).

and RFC.  They include hand packager, floor waxer, and hospital cleaner.  Consequently, the ALJ concluded that Plaintiff was not disabled as defined under the Act since March 16, 2009.  AR 25-35.

## II.  DISCUSSION

A. *Legal Standards*

This Court reviews the Commissioner's final decision to determine if the findings are supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence means "more than a mere scintilla" (*Richardson v. Perales*, 402 U.S. 389, 401 (1971)), but "less than a preponderance." *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir. 1975).  It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. "If the evidence can reasonably support either affirming or reversing a decision, we may not substitute our judgment for that of the Commissioner.  However, we must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (internal citation and quotations omitted).  "If the evidence can support either outcome, the Commissioner's decision must be upheld." *Benton v. Barnhart*, 331 F.3d 1030, 1035 (9th Cir. 2003); *see* 42 U.S.C. § 405(g) (2010).  But even if supported by substantial evidence, a decision may be set aside for legal error. *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009).

Moreover, an ALJ's error is harmless "when it was clear from the record that [the] error was inconsequential to the ultimate nondisability determination." *Robbins v. Soc. Sec. Admin*. 466 F.3d 880, 885 (9th Cir. 2006).

B. *Analysis*

Plaintiff raises three issues on appeal.  He contends the ALJ erred in: (1) adopting Dr. Glassmire's testimony , (3) rejecting Dr. Villar's opinion, and (2) rejecting the third party testimony

9

of Mr. Napier. The Court addresses them in turn.

    a. Dr. Glassmire

Plaintiff avers the ALJ improperly relied on Dr. Glassmire's testimony from the first hearing in 2010 to arrive at the 2013 decision because he did not have the benefit of viewing the post-2010 records from Mesa, including the mental impairment questionnaire from Dr. Villar. This, according to Plaintiff, was contrary to the rationale the ALJ used in rejecting the opinions of the state medical consultants. The Commissioner contends it is immaterial whether Dr. Glassmire viewed the additional evidence so long as his opinion remained, as it did, consistent with the record. She argued the new evidence did not show a worsening of Plaintiff's mental conditions inconsistent with the Glassmire's testimony.

Indeed, Dr. Glassmire did not consider the records from Mesa and their physicians concerning Plaintiff's treatment after the first hearing. But his opinion must still be considered in the ALJ's disability determination. *See* 20 C.F.R. § 416.927(c) (noting that an ALJ is required to "evaluate every medical opinion" submitted into evidence"). Moreover, there is no error in giving weight to his opinion to the extent it is supported by other evidence in the record, as is the case here. *See Spelatz v. Astrue*, 321 F. App'x 689, 692 (9th Cir. 2009) ("The reports of non-examining consultative physicians may serve as substantial evidence if they are supported by other evidence in the record.").[3]

The Court finds Plaintiff's averments unpersuasive. First, Dr. Glassmire's conclusion that Plaintiff has bipolar disorder not otherwise specified and a history of polysubstance is consistent with the diagnoses reflected in records from the CDCR and with what Plaintiff reported. Second, the ALJ was not bound to the rationale used in rejecting the state medical consultants' opinions. The medical consultants only reviewed the record up to November 2009, while Dr. Glassmore reviewed

---

[3] This unpublished decision is citable under Rule 32.1 of the Federal Rules of Appellate Procedure. *See also* 9th Cir. R. 36–3(b).

the record up to July 2010. Comparatively, the medical consultants therefore did not, as the ALJ noted, have an adequate view of the longitudinal nature of Plaintiff's mental impairments. Finally, the Mesa records after December 2010 do not undermine Dr. Glassmire's conclusion that Plaintiff be limited to simple, repetitive tasks, with no interactions with the public, no tasks requiring hypervigilance, no fast-paced work, and no responsibility for the safety of others. While adding to the depth of Plaintiff's file, the Mesa records did not, as Plaintiff claims, create a "significantly different" record than what Dr. Glassmire reviewed. And to the extent that Dr. Villar's opinion undermined Dr. Glassmore's, the ALJ properly rejected the former, as discussed below.

      b. Dr. Villar

Plaintiff avers the ALJ improperly rejected the opinion of Dr. Villar, which was the sole opinion by a treating physician after the first hearing and therefore uncontroverted, and should have received the greatest weight. The Commissioner counters the ALJ properly rejected Dr. Villar's opinion, which was controverted by Dr. Glassmire's testimony and Plaintiff's treatment notes.

Generally, "more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995) (footnote and citation omitted). To reject a treating physician's opinion which is contradicted by another physician, the ALJ must provide specific and legitimate reasons supported by substantial evidence in the record. *Id*. But an "ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Chaudhry v. Astrue*, 688 F.3d 661, 671 (9th Cir. 2012) (quotations and citation omitted).

Because Dr. Villar's opinion conflicts with Dr. Glassmore's, the ALJ was required to provide specific and legitimate reasons for discounting the former. Here, the ALJ could not be clearer in his expressed rationale for giving Dr. Villar's opinion "little weight." In the ALJ's words, Dr. Villar's opinion "is brief, conclusory, inconsistent with other evidence of record, and inadequately supported

11

by clinical findings." AR 31. Indeed, Dr. Villar's opinion was brief. *See Chaudhry*, 688 F.3d at 671. Further, the ALJ correctly explained that the opinion contained no explanation of Dr. Villar's opinion that Plaintiff had marked limitation in his ability to maintain social functioning and concentration, persistence or pace; and that Plaintiff had repeated episodes of extended duration of decompensation. Dr. Villar simply checked the corresponding boxes and provided no explanation. *Cf.* 20 C.F.R. § 404.1527 (2011) ("The better an explanation a source provides for an opinion, the more weight we will give that opinion.") Also undermining his opinion is, as the ALJ correctly noted, an absence of documentation showing episodes of decompensation for extended duration and the fact that on the day he completed the questionnaire, Plaintiff reported feeling good with his medications. Thus, the ALJ did not err.

        c.   <u>Mr. Napier</u>

Finally, Plaintiff avers the ALJ provided improper reasons for discrediting Mr. Napier's testimony, which was a medical source opinion consistent with the record. The Commissioner argues the ALJ properly considered the evidence and gave germane reasons for discrediting Mr. Napier's testimony, which was not an acceptable medical source.

Mr. Napier is not, contrary to Plaintiff's assertion, an acceptable medical source. Under 20 C.F.R. § 416.913(d), the list of other sources in addition to acceptable medical sources include "for example, nurse-practitioners, physicians' assistants . . . and therapists[.]" As a registered addiction specialist, Mr. Napier therefore qualifies as one of the other sources. And to "discount testimony from these other sources," the ALJ need only "give[] reasons germane to each witness[.]" *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (internal quotations omitted).

Here, the ALJ recounted Mr. Napier's testimony at the second hearing and found them not credible because they (1) were based in part on statements by Plaintiff which may not be reliable, (2) were not supported by the medical evidence, and (3) were not entitled to the same weight as a

12

qualifying medical source. The record buttresses the ALJ's rationale. First, the ALJ dedicated a lengthy paragraph to explaining why Mr. Napier's observations about Plaintiff's worsening condition is questionable. He cites to instances in the record where Plaintiff's oral statements were inconsistent and belied by the record. Second, aside from Plaintiff's and his ex-wife's testimony, nowhere in the record is there objective evidence that Plaintiff struggled to complete a task. *See, e.g.*, *Ball v. Colvin*, 607 F. App'x 709, 710 (9th Cir. 2015) (concluding that germane reasons include a finding that chiropractor's "assessments were inconsistent with contemporaneous medical evidence"). Finally, the ALJ is correct in stating that because Mr. Napier is not an acceptable medical source, his opinion is not in entitled to the same weight as other medical source opinions. *See* SSR 06-3p ("The fact that a medical opinion is from an "acceptable medical source" is a factor that may justify giving that opinion greater weight than an opinion from a medical source who is not an acceptable medical source[.]") (internal quotations omitted); *see Putman v. Colvin*, 586 F. App'x 691, 693 (9th Cir. 2014). Again, the ALJ did not err.

### III.  CONCLUSION

Accordingly, the Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The Clerk of this Court shall enter judgment in favor of the Commissioner of Social Security and against Plaintiff, Christopher Comminey.

IT IS SO ORDERED.

Dated:   **August 10, 2016**              **/s/ Sandra M. Snyder**
                                           UNITED STATES MAGISTRATE JUDGE